**CHRISTENSEN JAMES & MARTIN**
DARYL E. MARTIN, ESQ. (6735)
WESLEY J. SMITH, ESQ. (11871)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Email: dem@cjmlv.com, wes@cjmlv.com
*Attorneys for the Boards of Trustees of the*
*Southern Nevada Cement Masons Trusts*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \* \* \*

| | |
|---|---|
| Board of Trustees of the Cement Masons and Plasterers Health and Welfare Trust; Board of Trustees of the Cement Masons and Plasterers Joint Pension Trust; Board of Trustees of the Cement Masons and Plasterers Vacation Savings Plan Trust; Board of Trustees of the Operative Plasterers and Cement Masons International Association Local 797 Apprentice and Journeyman Training Trust; Board of Trustees of the Operative Plasterers and Cement Masons International Association Training Fund; Painting and Decorating Contractors Association Contract Administration and Industry Fund,<br><br>Plaintiffs,<br><br>vs.<br><br>Arenas, Parks & Stadiums Solutions, Inc., aka Arenas Parks and Stadiums Solutions Inc, a foreign corporation; Suretec Insurance Company, a foreign corporation; DOES 1–10 & ROES 1–10;<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT** |

The Boards of Trustees of Cement Masons and Plasterers Health and Welfare Trust; Cement Masons and Plasterers Joint Pension Trust; Cement Masons and Plasterers Vacation Savings Plan Trust; Operative Plasterers and Cement Masons International

Association Local 797 Apprentice and Journeyman Training Trust; Operative Plasterers and Cement Masons International Association Training Fund, ("Trust Funds"), and Painting and Decorating Contractors Association Contract Administration and Industry Fund (collectively "Plaintiffs") allege as follows:

## JURISDICTION & VENUE

1. Jurisdiction in this Court is based on the exclusive jurisdiction of the United States District Courts to hear civil actions brought by a fiduciary pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. §§ 1132(a)(3) and 1145] to redress violations or enforce the terms of ERISA or a multiemployer plan governed by Section 502(e) of ERISA [29 U.S.C. § 1132(e)]. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2. Jurisdiction is also based on the jurisdiction of the United States District Courts to hear suits for violations of contracts between an employer and a labor organization, without regard to the amount in controversy or the citizenship of the parties, as provided in Section 301(a) of the Labor Management Relations Act, 1947, as amended ("LMRA") [29 U.S.C. § 185(a)].

3. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District Court pursuant to Section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)] and Section 301 (a) of the LMRA [29 U.S.C. § 185(a)] in that this is the district in which certain of the Plans are administered.

CHRISTENSEN JAMES & MARTIN
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

# PARTIES

5. Each of the Trust Funds is an express trust created pursuant to a written declaration of trust ("Trust Agreements") consistent with § 302(c) of the LRMA [29 U.S.C. § 186(c)], and each Trust Fund exists to provide employee benefits to participants under a "multiemployer plan," "employee benefit plan," "employee benefit pension plan," and/or "employee welfare benefit plan," as the case may be, within the meaning of ERISA, 29 U.S.C. §1002(37), (2) and (3), to which the Defendants named herein are required to make monetary contributions pursuant to the terms of the Labor Agreement, as described below. Plaintiff Painting and Decorating Contractors Association Contract Administration and Industry Fund is a fund established by employers who contract with Operative Plasterers and Cement Masons International Association Local 797 ("Union").

6. The Board of Trustees and the individual Trustees of each of the Trust Funds is a "named fiduciary," "plan administrator" and "plan sponsor" and each is an individual "fiduciary," within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), & (21), with respect to collection of contributions due to the Trust Funds and related matters.

7. Defendant Arenas, Parks & Stadiums Solutions, Inc., aka Arena Parks and Stadiums Solutions Inc. ("APSS") is a New York corporation doing business as a contractor in Nevada.

8. Defendant Suretec Insurance Company ("Suretec") is a corporation operating as a surety in Nevada and is believed to be domiciled in Texas.

9. The true names and capacities, whether partnership, individual, corporate, company, associate or otherwise of John Does 1-10, inclusive, and Roe Corporations 1-10, inclusive, are unknown to the Plaintiffs at this time and said Defendants are therefore

sued by fictitious names. The Plaintiffs reserve the right to amend the Complaint to insert additional charging allegations, together with the true identities and capacities of these presently-unknown Defendants, when the same have been ascertained.

## GENERAL ALLEGATIONS

10. APSS was granted a B General Building contractor's license no. 0081907 by the Nevada State Contractors Board ("NSCB") on August 11, 2008. The B General Building license was suspended by the NSCB on February 26, 2019. APSS was granted a C4A Painting contractor's license no. 0082535 by NSCB on July 6, 2017. The C4A license was suspended by NSCB on or before July 20, 2019. APSS was granted a C-3 Carpentry Maintenance license no. 0082797 by NSCB on Sept. 25, 2017. The C-3 license was suspended on or before March 3, 2019.

11. As a condition of obtaining and maintaining its contractors licenses, APSS sought and obtained the following License Bonds from Suretec, for the purpose of securing payment for, among other things, claims for labor, including unpaid fringe benefit contributions, as set forth in NRS 624.273:

   a. SURETEC issued NSCB License Bond No. 5214683 to APSS in the amount of $50,000.00, effective December 14, 2016 through February 26, 2019;

   b. SURETEC issued NSCB License Bond No. 5235808 to APSS in the amount of $50,000.00, effective June 26, 2017 through July 20, 2019;

   c. SURETEC issued NSCB License Bond No. 5294323 to APSS in the amount of $50,000.00, effective September 18, 2017 through March 3, 2019;

12. At all material times, Operative Plasterers and Cement Masons International Association Local 797 ("Union"), was, and remains, a labor organization representing

-4-

employees in the construction industry in Southern Nevada. The Union represents employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12).

13. On August 16, 2017, Vincent Caccamo, acting on behalf of the employer APSS, executed a document agreeing to be bound by the 2017-2021 Master Labor Agreement between the Southern Nevada Chapter of the Painting and Decorating Contractors of America and the Union, effective from July 1, 2017 through June 30, 2021 ("Labor Agreement"). APSS's signature page lists "Arenas Parks and Stadiums Solutions Inc" as the company name of the employer.

14. APSS has not attempted to cancel or terminate the Labor Agreement in accordance with the terms of the Labor Agreement or Section 8(d) of the NLRA [29 U.S.C. § 158(d)]. The Labor Agreement has not been terminated and remains in full force and effect.

15. The Labor Agreement applies to employees of the signatory contractor (APSS) who perform work covered by the Labor Agreement and specifically described in the work jurisdiction of the Labor Agreement, including but not limited to building construction, alteration, repair, and demolition, highway and engineering construction, concrete construction, concrete mixing, concrete placement and concrete finishing, concrete curing, use and placement of grout, waterproofing, and various types of related work. The work covered by the Labor Agreement is defined by job classification and type of work performed. All employees of APSS are covered by the Labor Agreement if they perform the type of work described therein, regardless of affiliation or non-affiliation with any union.

16. By executing the Labor Agreement, APSS agreed to be bound by the terms and provisions of the Trust Agreements and other documents governing the Plaintiffs, including the Trust Funds' written collection policy ("Collection Policy").

17. At all material times, APSS was obligated by the terms of the Labor Agreement and Trust Agreements to submit written reports to the Plaintiffs on a timely basis showing the identities of employees performing work covered by the Labor Agreement, and the number of hours worked by or paid to these employees. Further, APSS promised to pay fringe benefit contributions to the Plaintiffs on a monthly basis and at specified rates for each hour worked by or paid to its employees for performance of labor covered by the Labor Agreement. APSS's monthly reports and payment of contributions were and are due the first day of the month following the month in which the covered labor was performed and are delinquent if not remitted by the last day of the month. Signatory employers are required to submit monthly remittance reports to the Plaintiffs whether or not any covered work was performed during the work month to be reported.

18. Contributions to the Trust Funds are required to be remitted by the employer in addition to wages paid directly to employees.

19. Employer contributions are considered fund assets from the date they are due, whether or not they are actually paid, pursuant to the written terms of the Trust Agreements and the Collection Policy adopted by the Trustees of the Trusts, and all such contributions must be held in trust by an employer until remitted to the Plaintiffs. Contributions that are deducted from wages are to be held in constructive trust by an employer. Both employer contributions and wage deductions are components of the employees' compensation and do not belong to the employer. Employers have a fiduciary

duty to ensure that both employer contributions and wage deductions are properly and timely delivered to the Plaintiffs.

20. Plaintiffs are intended beneficiaries of the Labor Agreement, as a result of the report and contribution obligations imposed in the Labor Agreement, the Trust Agreements and the Trusts' written Collection Policy.

21. APSS is an "employer" as that term is understood and defined in the Labor Agreement and is an "employer" as that term is used in Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and therefore, APSS is "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.

22. APSS is an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined and used in Sections 501(1) and 501(3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning and use of Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

23. Consistent with the Plaintiffs' regular business practices, the Trust Agreements and the written Collection Policy provide that the Trust Funds may undertake reasonable inquiry, including audit, of an employer's records insofar as may be necessary or appropriate to verify an employer's compliance with its obligations to the Trust Funds under the Labor Agreement. The United States Supreme Court has upheld a trust fund's right to audit the records of its contributing employers pursuant to the terms of the trust fund's written trust agreement. *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985). Further, the Ninth Circuit Court of Appeals has determined that even if an employer did not sign the trust

agreement, it is still subject to the trust fund's audit rights. *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493–94 (9th Cir. 1990).

24. In January or February 2019 APSS ceased operating in Nevada, and the Boards of Trustees of the Trust Funds engaged auditors for the purpose of meeting the Trustees' fiduciary duties, by determining whether APSS properly reported and paid all required contributions to the Trust Funds ("Audit"). APSS supplied some of the information needed by the auditors, who preliminary determined that between September August 2017 and February 2019, APSS generally reported hours to the Trust Funds. However, the auditors determined that APSS had failed to supply payroll records needed for the months of November 2017 and May 2018, making it impossible to complete the Audit. Efforts undertaken by the auditors and Plaintiffs' legal counsel to persuade APSS to provide the missing payroll records proved fruitless, making this lawsuit necessary.

25. The Collection Policy requires that all legal fees, audit fees and all other costs incurred by the Plaintiffs to collect from a delinquent employer or to compel an employer to cooperate with an audit authorized by the Trusts be paid by the delinquent or non-cooperative employer.

**FIRST CAUSE OF ACTION**

**[Breach of Labor Agreement and Trust Agreements – APSS]**

26. Plaintiffs restate and reallege the above allegations.

27. APSS' failure to provide required information and documentation to the Auditors engaged by the Trust Funds is a violation of the terms of the Labor Agreement and the Trust Agreements, as is APSS's failure to remit required contributions (if any) in connection with work described in the Labor Agreement and performed by APSS'

-8-

employees. As a direct result of these breaches, APSS has become indebted to the Plaintiffs for attorneys' fees and costs incurred by the Trust Funds to compel production of information and documentation and may become indebted to the Trust Funds for contributions and other sums in an amount which is presently unknown, but which the Plaintiffs will establish by proof.

28. Pursuant to the Labor Agreement, the Trust Agreements, the Trust Funds' written Collection Policy, and as mandated by 29 U.S.C. § 1132(g), APSS agreed that in the event of any delinquency or failure to fully cooperate with the Trusts' auditing and collection processes, APSS would pay, in addition to the delinquent fringe benefit contributions, benefits, dues and/or withholdings, i) interest thereon at the rates established under the Labor Agreement or Trust Agreements, or at the legal rate, whichever is greater; ii) liquidated damages thereon in an amount set by the Labor Agreement, Trust Agreements, or as otherwise provided or by law; and iii) all legal and auditing costs in connection therewith, whether incurred before or after litigation is commenced.

29. It has been necessary for the Plaintiffs to engage legal counsel to enforce the contractual obligations owed to the Plaintiffs, and to compel compliance with applicable information and document disclosure obligations, and to collect all amounts due.

## SECOND CAUSE OF ACTION

**[Demand for relief for APSS' violation of ERISA – APSS]**

30. The Trust Funds restate and reallege the above allegations.

31. By failing to timely report and pay contributions to the Trusts and submit to an audit as set forth herein in accordance with the Labor Agreement and Trust Agreements,

APSS violated ERISA [29 U.S.C. § 1145]. In accordance with the terms of the Labor Agreement and Trust Agreements, and pursuant to Sections 502(g)(2) and 515 of ERISA [29 U.S.C. §§ 1132(g)(2) and 1145], the Plaintiffs are entitled to payment of all contributions determined to be due, as well as liquidated damages, interest, audit costs, attorneys' fees, costs incurred in enforcing the terms of the Labor Agreement and Trust Agreements, and such other legal and equitable relief as the Court deems appropriate.

32. The contract breaches and violations of ERISA identified above harm the Plaintiffs and place at risk the Plaintiffs' ability to provide required employee benefits to their beneficiaries.

33. Plaintiffs' remedies at law are not sufficient to adequately compensate the Plaintiffs or their beneficiaries from past harm caused by said violations, or to protect them from the harm or threat of harm caused by similar future violations.

34. Plaintiffs are likely to prevail on the merits of their claims.

35. The Trust Funds are entitled to injunctive relief under 29 U.S.C. § 1132(a)(3) and other applicable laws affirmatively compelling APSS and any third-parties holding the same, to make relevant information and records available to the Plaintiffs for inspection and audit to verify the APSS complied with its obligations under the Labor Agreement, the Trust Agreements, and the Collection Policy.

36. The Trust Funds are entitled to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and other applicable law affirmatively compelling APSS to grant access to or to provide copies of all relevant monthly remittance reports and payroll records and to pay all contribution amounts and related damages to the Plaintiffs in compliance with

APSS' obligations under the Labor Agreement, the Trust Agreements, and the Collection Policy.

### THIRD CAUSE OF ACTION

**[Demand for relief on License Bonds under NRS 624.273 – Suretec]**

37. The Plaintiffs here restate and reallege the above allegations.

38. Suretec issued the bonds described in paragraph 11 ("License Bonds") as a condition for APSS to obtain and maintain its contracting licenses.

39. Plaintiffs are intended third-party beneficiaries under the License Bonds.

40. Pursuant to N.R.S. 624.273, the delinquencies asserted herein and owed by APSS to the Plaintiffs are properly payable out of the proceeds of the License Bonds.

41. The proceeds of the License Bonds must be paid to the Plaintiffs in full or partial satisfaction, as the case may be, of APSS' obligations owed to the Plaintiffs, or as damages caused by APSS' failure to properly act in accordance with the Labor Agreement, Trust Agreements, Collection Policy, and/or applicable law, subject only to the penal limit on the License Bonds.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for Judgment against Defendants, and each of them, as follows:

1. For the Court's Order compelling APSS to deliver or make available to the Plaintiffs all information and documents necessary to permit Plaintiffs' auditors to complete payroll compliance audits deemed necessary and proper by the Plaintiffs;

2. For the Court's Order enjoining APSS from failing to fully cooperate with any audits deemed necessary and proper by the Plaintiffs, and from failing to timely pay

to the Plaintiffs delinquent amounts discovered by audit or as otherwise incurred in the normal course of business;

3. For the Court's Order compelling APSS to deliver to the Plaintiffs pertinent information and documents including but not limited to monthly remittance reports detailing all covered work performed, and payroll records confirming the hours worked by and/or the sums paid to all APSS employees;

4. For the Court's Order affirmatively compelling APSS to abide by the terms of the Labor Agreement, including but not limited to submitting and paying accurate monthly contribution remittance reports and contribution amounts to the Plaintiffs on a timely basis;

5. For the Court's Order enjoining APSS from failing to timely pay the Plaintiffs future contribution amounts, as they become due;

6. For unpaid fringe benefits contributions in amounts to be proven at trial;

7. For damages for breach of contract and violation of ERISA in an amount to be proven at trial;

8. For liquidated damages in amounts to be proven at trial;

9. For accrued interest on all unpaid contributions and damages from their due dates until paid;

10. For Plaintiffs' audit costs in an amount to be proven at trial;

11. For Plaintiffs' reasonable attorneys' fees for having to bring this action to compel audit compliance, reporting compliance, and contribution recovery, with associated damages;

12. For Plaintiffs' costs of suit incurred herein;

CHRISTENSEN JAMES & MARTIN
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

13. For the Court's Order awarding to Plaintiffs the proceeds of the License Bonds in full or partial satisfaction (as the case may be) of APSS' obligations to the Plaintiffs;

14. For such additional relief as may be provided for by 29 U.S.C. § 1132; and

15. For such additional relief as this Court may deem just and proper.

DATED this 7th day of August, 2019.

By: */s/ Daryl E. Martin*
Daryl E. Martin, Esq.
Nevada Bar No. 6735
7440 W. Sahara Ave.
Las Vegas, NV 89117
Tel: (702) 255-1718
Email: dem@cjmlv.com
*Attorneys for Boards of Trustees of the Southern Nevada Cement Masons Trusts*

-13-